Patricia Lee [8287]
Telia U. Williams [9359]
HUTCHISON & STEFFEN, LLC
10080 West Alta Drive, Suite 200
Las Vegas, NV 89145
Tel:    (702) 385-2500
Fax:    (702) 385-2086
plee@hutchlegal.com
twilliams@hutchlegal.com

*Attorneys for Kathleen Allgood,
and the Estate of Anne Marie Allgood*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| KATHLEEN ALLGOOD, an individual, and Trustee, and, ESTATE OF ANNE MARIE ALLGOOD, <br><br> Plaintiffs, <br><br> v. <br><br> WEST ASSET MANAGEMENT, INC., a Corporation; USAA SECURED HOME EQUITY, a Corporation; NATIONAL DEFAULT SERVICING CORPORATION, a Corporation; NATIONAL BANKRUPTCY SERVICES.COM, LLC, <br><br> *Defendants.* | Case No. <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br> (Unlawful Debt Collection Practices) |

## I.    INTRODUCTION

1.    This is an action for damages brought by an individual consumer and estate in behalf of a deceased consumer, for Defendants' West Asset Management, Inc., USAA Secured Home Equity, and National Default Servicing Corporation's violations of the Fair Debt

Collection Practices Act, 15 U.S.C. §1692, *et. seq.* (hereinafter "FDCPA") and the Nevada

Unlawful Debt Collection Practices Act, Nevada Revised Statutes 649.005 *et. seq.* (hereinafter,

"state Act"), which prohibits debt collectors from engaging in abusive, deceptive, and unfair

practices.

**II.      JURISDICTION AND VENUE**

2.      Jurisdiction of this Court arises under 15 U.S.C. §1692k(d), 28 U.S.C. §1337,

and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

Declaratory relief is available pursuant to 28 U.S.C. §§2201 and 2202.  Venue in this District is

proper in that the Defendants transact business here and the conduct complained of, in essence,

occurred here.

**III.     PARTIES**

3.      Plaintiff, Kathleen Allgood (hereinafter "Ms. Allgood"), is a natural person

residing in Las Vegas, Nevada, the sole beneficiary of the Estate of Anne Marie Allgood, and

the Trustee of the Anne Marie Allgood Living Trust, which was, upon information and belief,

created in January 2001 in Clark County, Nevada,  and still exists.

4.      Plaintiff, Estate of Anne Marie Allgood  is an estate, for which Trustee and sole

beneficiary is Ms.Allgood.

5.      Defendant West Asset Management, Inc. ("WAM") is a Delaware corporation

with a principal place of business within the Northern District of Georgia, at 2253 Northwest

Parkway SE, Suite 500, Marietta, Georgia 30067.  WAM is also an active, foreign corporation

in Nevada, with a Registered Agent listed with the Secretary of State of Nevada as, CSC

Services of Nevada, Inc., 2215-B Renaissance Drive, Las Vegas, NV, 89119.

6.      Upon information and belief, the principal purpose of WAM is the collection of

2

1  debts using the mail and telephone, and WAM regularly attempts to collect debts alleged to be

2  due another.  WAM is thus a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

3
4      7.      Defendant USAA Secured Home Equity ("USHE"), is, upon information and

5  belief a Texas corporation with a principal place of business within San Antonio, Texas, with

6  an address of 9800 Fredericksburg Road, San Antonio, Texas 78288.

7      8.      Upon information and belief, the principal purpose of USHE is the collection of

8
9  debts using the mail and telephone, and USHE regularly attempts to collect debts alleged to be

10  due another.  USHE is thus a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

11     9.      Defendant National Default Servicing Corporation ("NDSC") is, upon

12  information and belief, an Arizona corporation, with a principal place of business at 7720 N.

13  16th Street, Suite 300, Phoenix, Arizona 85020.  NDSC is also an active, foreign corporation in

14  Nevada, with a Registered Agent listed with the Secretary of State of Nevada as The

15
16  Corporation Trust Company of Nevada, 311 S. Division Street, Carson City, Nevada, 8970

17     10.     Upon information and belief, the principal purpose of NDSC is the collection of

18  debts using the mail and telephone, and NDSC regularly attempts to collect debts alleged to be

19  due another.  NDSC is thus a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

20
21     11.     Defendant National Bankruptcy Services.Com, LLC ("NBS"), is, upon

22  information and belief, a Texas corporation, with an address of 9441 LBJ Freeway, Suite 250,

23  Dallas, Texas 75243.

24     12.     Upon information and belief, the principal purpose of NBS is the collection of

25  debts using the mail and telephone, and NBS regularly attempts to collect debts alleged to be

26
27  due another.  NBS is thus a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

28

## IV.   FACTUAL ALLEGATIONS

13.   Upon information and belief, in sometime during 2011, the late Anne Marie Allgood ("Mrs. Allgood"), took out a home equity line of credit with USAA Federal Savings Bank ("USAA"), in the approximate amount of $30,000, secured by her home at 4413 La Lima Court, in Las Vegas, Nevada, which was fully paid for.

14.   Mrs. Allgood made timely, regular monthly payments on the line of credit, in, upon information and belief, the approximate amount of $300 until her death in April 2011. Mrs. Allgood primarily did so through automatic deductions of her checking account through Wells Fargo bank in Nevada.

15.   Mrs. Allgood had transferred ownership of her home to the Anne Marie Allgood Living Trust,  for which the Trustee is plaintiff, Kathleen Allgood ("Ms. Allgood"), the only child of the late Mrs. Allgood.

16.   Ms. Allgood promptly informed the USAA Federal Savings Bank of her mother's demise, and continued to make monthly payments out of her personal income and/or Trust assets until approximately the Summer 2011, when Ms. Allgood became embroiled in a contentious dispute, followed by litigation involving her half-sister (daughter of Ms. Allgood's deceased father, and stepdaughter of Mrs. Allgood), who claimed some interest in the Estate of Anne Marie Allgood, such that a complaint in Probate Court in Clark County, Nevada was filed.

17.   Ms. Allgood had to retain counsel to assist her in the claims made against herself and the Trust by her half-sister, which was eventually resolved, but not before Ms. Allgood had to expend significant time and expense.  In the meantime, the Trust assets were largely held in abeyance, to include not making payments on the line of credit.

4

18.     On or near November 20, 2011, USAA sent a letter to Ms. Allgood referencing Mrs. Allgood's death, and updating her on the status of the line of credit account (hereinafter "the account").

19.     USAA's letter was signed by Dennis J. Gudenau, Vice President, Member Debt Solutions for USAA, Mr. Gudenau informed Ms. Allgood that her late mother's account had been changed into the name of the Estate of Anne Marie Allgood and that the current account balance was $27,054.57. Mr. Gudenau let Ms. Allgood know that he had stopped the ability to draft from the account and that any checks related to the account needed to be destroyed. Mr. Gudenau also informed Ms. Allgood that an "estate specialist" may contact her.

20.     Thereafter, Ms. Allgood and the Estate of Anne Marie Allgood ("the Estate") faced a barrage of distressing letters, phone calls, and other communications, some of them violative of the FDCPA by third-party debt collectors in an attempt to collect on the debt.

21.     A few weeks later, NDSC mailed a letter to Anne Marie Allgood, containing the date, December 7, 2011, which was received by Ms. Allgood, Trustee, and the Estate of Anne Marie Allgood, by Ms. Allgood, stating that the account was currently at $28,036.28 "plus those charges that continue to accrue until the loan is paid, such as interest, late charges, advances, expenses of collection, and attorney's/trustee's fees."

22.     NDSC started its letter by saying, "This firm has been retained to enforce the terms of the above referenced loan by non-judicial foreclosure."

23.     The NDSC letter also stated that the "good faith estimate of the debt owed is $28,036.28 plus those charges that continue to accrue until the loan is paid, such as interest, late charges, advances, expenses of collection, and attorneys'/trustee's fees." The letter assured that if a "statement of all these amounts computed through a specified date," such statement could

1   be requested through "this office," that is, NDSC's office.

2       24.     The NDSC letter also stated the following: "The arrearage amount is the sum of
3
    payments that have come due on and after the date of default of July 4, 2011, plus late charges,
4
5   periodic adjustments to the payment amount, expenses of collection, and attorney's/trustee's

6   fees as further described in the Notice of Default enclosed."  Upon information and belief, no

7   Notice of Default was enclosed.

8       25.     NDSC stated that the creditor and current beneficiary was National Bankruptcy
9
    Services.Com, LLC (NBS), and that the debt was owed to NBS.
10

11      26.     NDSC disclaimed that it is a debt collector, but informed Ms. Allgood that she

12  had thirty days in which to dispute the validity of the debt owed.

13      27.     NDSC mailed another letter, again containing the date, December 7, 2011, the
14
    same date as the aforementioned letter, but this time sent to the attention of Anne Marie
15
16  Allgood, Individually and as Trustee of the Anne Marie Allgood Living Trust, NDSC sent Ms.

17  Allgood another letter (the "additional letter").  NDSC again opened its additional letter stating,

18  "This firm has been retained to enforce the terms of the above referenced loan by non-judicial
19
    foreclosure."
20
21      28.     The additional letter also stated that the "good faith estimate of the debt owed is

22  $28,036.28 plus those charges that continue to accrue until the loan is paid, such as interest, late

23  charges, advances, expenses of collection, and attorneys'/trustee's fees."  The letter assured that

24  if a "statement of all these amounts computed through a specified date," such statement could
25
    be requested through "this office," that is, NDSC's office.
26
27      29.     The additional letter also stated the following: "The arrearage amount is the sum

28  of payments that have come due on and after the date of default of July 4, 2011, plus late

6

charges, periodic adjustments to the payment amount, expenses of collection, and attorney's/trustee's fees as further described in the Notice of Default enclosed." Upon information and belief, no Notice of Default was enclosed.

30.     Ms. Allgood reasonably took these two letters from NDSC to mean that a Notice of Default, the public notice that in every state, including Nevada (pursuant to Nevada Revised Statutes, Chapter 107), must be filed with the County Recorder in which the property is located, was filed against the property. This caused Ms. Allgood great consternation and worry.

31.     However, no recording was ever made against the property. And no Notice of Default was ever filed, at least not as of the writing of this Complaint.

32.     Nor was there any intention on the part of NDSC or NBS to bring an imminent foreclosure against the property for the debt.

33.     Nor, upon information and belief, were any Trustee's fees or attorneys' fees incurred on the part of NDSC or NBS.

34.     Both NDSC letters, (which also apparently included NBS), stated, "This firm is not a Debt Collector as that term is defined pursuant to the Fair Debt Collection Practices Act within this jurisdiction (see Mansour vs. Cal-Western Reconveyance Corp. 618 F.Supp.2d 1178 (D. Ariz. 2009). Should a subsequent determination be made that this firm is a Debt Collector as that term is defined within the Act, then you are notified that any information obtained will be used for the purpose of collecting a debt..."

35.     Both NDSC letters, (which also apparently included NBS), ended by saying that the "notifications provided herein do not limit or detract from the effect of foreclosure upon the subject property."

36.     Both NDSC letters were signed National Default Servicing Corporation, Trustee

7

Sales Division, with a telephone number of (602)264-6101.

37.     NDSC thereafter mailed yet *another* letter containing the date, December 7, 2011, (For the sake of convenience, this letter will be called the "third letter." But no determination whatsoever is intended as to the order or date when this, or any of the other letters were prepared and/or sent ).

38.     The third letter was addressed to Anne Marie Allgood, Individually and as Trustee of the Anne-Marie Allgood Living Trust, and saluted the recipient by "Dear Borrower."

39.     The third letter stated that NDSC "has been retained by [NBS], the Creditor of the above referenced mortgage...to contact you regarding the status of your account."

40.     The third letter stated that "the Creditor" is also the "Holder and/or Beneficiary." The letter stated that this Creditor, already identified as NBS, "has authorized this company to act on its behalf regarding the collection of the Debt." NDSC noted that it is "relying on information provided by such entities [sic]..."

41.     But going on, the third letter stated that NBS "services your mortgage." The letter stated that the Borrower is "in serious default because you have not made your required payments." The claimed that the total monthly payments were $1,578.60. This differed substantially from the approximately $300 that Mrs. Allgood (and subsequently Ms. Allgood), upon information and belief, was paying.

42.     The third letter claimed that the Borrower could "reinstate your loan" as of the date of the letter (December 7, 2011), by paying the sum of $1,390.50.

43.     The third letter claimed that the unpaid principal balance was $26,361.02. The letter stated that there were 6 delinquent payments due from July 4, 2011.

44.     In addition, the third letter claimed that Anne Marie Allgood, Individually and a

8

1     Trustee, owed \$75.00 for a "demand letter," and deducted -\$263.10 for "other charges." The

2     letter left blanks for sections entitled "Current Monthly Payment," "Total Monthly Late

3

4     Charges," and "Corporate Advance."

5        45.     The third letter stated, at the end of the first page: "You have the right to cure

6     your default. In order to cure your default, you must within 30 days from the date of this letter,

7     pay [NBS] the TOTAL AMOUNT DUE of \$1,390.50 PLUS the Current Monthly Payment and

8     any late charges which may become due."

9

10        46.     The additional letter required Ms. Allgood to make payments on the account to

11     NBS, and in certified funds, cashier's check or money order. NDSC informed Ms. Allgood that

12     NBS would reserve the right to reject a partial payment of the total amount due without waiving

13     any of their rights.

14

15        47.     The third letter threatened that if Ms. Allgood did "not cure [her] default," that

16     NBS would accelerate the loan with the full amount remaining accelerated and becoming due in

17     full, and "without further notice" foreclosure proceedings "will be initiated." The letter went

18     on, "Failure to cure your default may result in the foreclosure of your property, if permitted by

19     law. A deficiency judgment may be obtained against you to collect the balance of your loan."

20

21        48.     The third letter stated: "You may if required by law, have the right to cure your

22     default after the acceleration of your mortgage loan and prior to the foreclosure sale, by paying

23     all amounts past due within the time permitted by law. In addition to the past due amounts, you

24     will be required to pay reasonable fees and costs incurred by [NBS]. You may have the right to

25

26     bring a court action to assert the non-existence of default or any other defense you may have to

27     acceleration and foreclosure."

28        49.     The third letter stated that "[a]ll communication about this matter must be made

through [NBS]". Further, if any questions were needing to be answered regarding the amount due, that NBS should be contacted. NDSC provided NBS' address as: National Bankruptcy Services.Com, LlC, 9441 LBJ Freeway, Suite 250, Dallas, TX 75243.

50. The third letter stated that NBS is required to notify the recipient of the additional letter of the availability of government approved home ownership counseling agencies "designed to help homeowners avoid losing their home," and provided a telephone number to assist in obtaining a list of approved counseling agencies.

51. The third letter included notice pursuant to FDCPA at the end of the letter and information about Ms. Allgood's right to dispute the debt in 30 days and to get information about the original creditor in much smaller font and print so that it was not as noticeable as the rest of the print, and in fact, was overshadowed by the rest of the letter.

52. All three of the NDSC letters also failed to mention, in indicating that a non-judicial foreclosure was imminent, that Ms. Allgood would not be foreclosed on without notice, and in fact, that NDSC–if it had standing to bring a non-judicial foreclosure–would be required, upon Ms. Allgood's or some other authorized representative's authority–to participate in Nevada's Mandatory Mediation program prior to obtaining a certificate to foreclose.

53. None of the three letters acknowledged that what the late Mrs. Allgood had taken out was a home equity line of credit and not, precisely a mortgage, and definitely not a primary mortgage that could be foreclosed upon in a non-judicial procedure in Nevada.

54. Aside from the numerous letters, Ms. Allgood also received, upon information and belief, numerous telephone calls from NDSC. Despite the statements in the letters from NDSC that informed Ms. Allgood that NBS owned the Debt, and/or that payments should go to NBS, in the telephone calls, agents, representatives, and/or employees for NDSC stated or

implied that NDSC owned the debt and that payments should go to it. At other times, NDSC represented that USAA still owned the debt.

55. On several occasions, Ms. Allgood took the initiative to contact representatives for NDSC at the telephone number provided in the letters and spoke to its agents, representatives, and/or employees. In these telephone calls, NDSC agents, representatives, and/or employees led Ms. Allgood to believe that foreclosure on the Trust asset, her late mother's house, was in imminent danger of being foreclosed upon in a non-judicial foreclosure.

56. Alternatively, based on the name of NBS, and statements made by NDSC agents, representatives, and/or employees, Ms. Allgood worried that her mother had declared bankruptcy prior to her death, unbeknownst to her, and that NBS and/or NDSC were creditors of her late mother's bankruptcy proceedings.

57. None of NDSC's agents, representatives, and/or employees could or would provide Ms. Allgood with any accurate information regarding the account, nor did they agree to allow her to pay the amount she had been paying directly to the bank, around $300 per month, as did Ms. Allgood's mother had, before.

58. Having spent money successfully defending the Trust and her mother's Estate, Ms. Allgood was too emotionally and financially spent to immediately consult a lawyer about her rights and responsibilities. She was most concerned about losing the house to a non-judicial foreclosure or in a bankruptcy, but worried she could do little about it.

59. Finally, a fourth distinct letter (again, though no assumption with respect to order or date posted or mailed, is inferred), again containing the date, December 7, 2011, was mailed to Ms. Allgood. This correspondence had the form and feel of a Summons and Complaint for a lawsuit, and stated it was from WAM. The front page was like a cover sheet

11

and had a stamp, "Copy." It had at the top the address, 7171 Mercy Road, PO Box 6183, Omaha, NE 68106, and a telephone number, 800-878-3317.

60.     The cover sheet stated its reference as an "Enclosed claim by West Asset Management, Inc. For USAA Secured Home Equity [USHE]." It listed the last four digits of Mrs. Allgood's account number, and stated a balance owing of $27,054.57. The next part of the sheet stated it was "Regarding," followed by: "Decedent's Name: Anne-Marie Allgood."

61.     The cover sheet continued on with an "Estate/Docket Number" of "P-11-072342T." And it concluded with the "Date of Death" of Mrs. Allgood, "04/21/2011" and the last four digits of her social security number, "4767."

62.     The next page of the WAM correspondence also had a stamp, "Copy" at the top. It also stated, "In the __ Judicial District Court of the State of Nevada In and For the County of CLARK." There was a caption that stated, "In the Matter of the Estate of Anne-Marie Allgood, Deceased." And the title of the document was "Creditor's Claim." Next appeared the "Case No. P-11-072342-T."

63.     That was followed by "Claim of West Asset Management, Inc. For USAA Secured Home Equity Loan [USHE], for $27,054.57." The rest of the document, which looked very much like a legitimate complaint, had blank lines, followed by "The undersigned creditor of the above-named deceased, presents this claim against the deceased, a statement of which is hereto annexed, marked 'A'". The document continued illegibly, followed by, "used until date of death, account #XXXX1031, WEST ASSET MANAGEMENT, INC., for USAA SECURED HOME EQUITY LOAN [USHE]," followed by the address from the first page. Finally, in a column to the right appeared the amount, $27,054.57.

64.     The last page also contained the stamp, "Copy," and contained an Affidavit

executed in the State of Nebraska, in the city of Omaha, by an Anne Rinaldi, who swore that

she was the "authorized agent of West Asset Management, Inc. For USAA SECURED HOME

EQUITY [USHE], creditor named in and who makes the foregoing claim against the estate of

ANNE-MARIE ALLGOOD, deceased, that the amount of said claim, to wit: the sum of

TWENTY-SEVEN THOUSAND FIFTY-FOUR AND 57/100 dollars ($27,054.57) is justly due

to said claimant; that no payments have been made thereon which are not credited, and that

there are not offsets to the same to the knowledge of this affiant."

65.    The Affidavit is notarized and signed, with WAM's mailing address.

66.    However, at no point was there a lawsuit such as was described in WAM's

correspondence in Clark County, and upon information and belief, *anywhere*. The entire

document was a sham, but Ms. Allgood did not know that.

67.    Ms. Allgood was reasonably distraught to receive what looked like a "Summons

and Complaint" and felt despair. Not being able to afford an attorney, again Ms. Allgood

contacted the telephone number contained on the WAM correspondence, but, upon information

and belief, was not successful in obtaining a "settlement" of the bogus claim.

68.    The WAM letter, upon information and belief, was sent with a duplicate copy of

a letter previously mailed from NDSC.

69.    Ms. Allgood continued to grow worried and anxious regarding the information

and/or correspondence she received from the defendants, losing sleep and being unable to

concentrate on her job. It was particularly difficult for Ms. Allgood who had just lost her

mother. After believing she had no options, some weeks later, inadvertently, Ms. Allgood

mentioned to her counsel for the Trust litigation that her mother's house was in danger of

bankruptcy and foreclosure, since Ms. Allgood had been "sued." It was only after finally

13

showing the bogus document to her counsel, a few months later, that Ms. Allgood first received
an inkling that she may not have really been sued.

70.     However, Ms. Allgood continued to try to respond to the persistent calls of
NDSC and negotiate an agreeable payment plan with NDSC, to no avail. Eventually, Ms.
Allgood requested that NDSC stop contacting her.

71.     In or near August 21, 2012, Ms. Allgood received a series of letters from NDSC
identical to the first three she received.

**FIRST CLAIM FOR RELIEF**
**(FDCPA--Against All Defendants)**

72.     Plaintiff repeats and realleges and incorporates by reference the foregoing
paragraphs, as though set forth completely herein.

73.     The Defendants violated 15 U.S.C. §1692e by making false representations of
the character, amount, or legal status of the debt in question.

74.     The Defendants violated 15 U.S.C. §1692e by the use of false or deceptive
means to collect or attempt to collect the debt in question, or to obtain information concerning a
consumer.

75.     The Defendants violated 15 U.S.C. §1692e by the false representation of any
services rendered or compensation which may be lawfully received by any debt collector or the
collection of a debt.

76.     The Defendants violated 15 U.S.C. §1692e by the false representation or
implication that any individual is an attorney or that any communication is from an attorney.

77.     The Defendants violated 15 U.S.C. §1692e by the by the threat to take any action
that cannot legally be taken or that is not intended to be taken.

14

78.     The Defendants violated 15 U.S.C. §1692e by the false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to payment of the debt or become subject to any practice prohibited by this title.

79.     Upon information and belief, the Defendants violated 15 U.S.C. §1692e by communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

80.     One or more of the Defendants violated 15 U.S.C. §1692e by the use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

81.     One or more of the Defendants violated 15 U.S.C. §1692c by contacting the Plaintiff after she had requested that it cease communication with her.

82.     One or more of the Defendants violated 15 U.S.C. §1692d by repeatedly telephoning the Plaintiff or engaging the Plaintiff in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass her.

83.     The Defendants violated 15 U.S.C. §1692g by various violations of the requirements of the initial communication letter, including, but not limited to, failing to notify the consumer that she could have disputed the debt in writing within the thirty-day period, or by overshadowing the notice required to be given.

84.     One or more of the Defendants violated 15 U.S.C. §1692j by designing, compiling, and/or furnishing a form knowing that such form would be used to create the false

15

belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such allegedly owes such creditor, when in fact such person is not so participating.

85.     Furthermore, upon information and belief, one or more of the Defendants has attempted to collect this debt from the Plaintiff in Nevada without having been properly licensed to collect a debt, pursuant to Nevada Revised Statute 649.075, which violates the state Act requiring collection agencies to be licensed in the state.

86.     All of the Defendants' acts as described above were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

87.     As a result of the above violations of the FDCPA, the Defendants have also violated the state Act, pursuant to Nevada Revised Statutes 649.370.

88.     As a result of the above violations of the FDCPA and state Act regarding unlawful debt collection, the Defendants are liable to the Plaintiff for declaratory judgment that Defendants' conduct violated the FDCPA, and Plaintiff's actual damages, statutory damages, injunctive relief, costs, and attorneys' fees.

89.     The Defendants' actions have also caused the Plaintiff emotional distress, and/or pain and suffering, especially due to the sensitive time during the mourning of the death of her mother.

90.     Moreover, one or more of the Defendants' actions were done so recklessly and/or maliciously as to justify the imposition of punitive damages, and/or damages for emotional distress and/or pain and suffering.

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants for the following :

1.  Declaratory judgment that the defendants' conduct violated the FDCPA, and declaratory and injunctive relief for the defendants' violations of the state Act;

2.  Actual damages;

3.  Consequential damages;

4.  Statutory damages pursuant to 15 U.S.C. § 1692k;

5.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k;

6.  For any other relief that the Court deems appropriate.


## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demands trial by jury in this action.


Dated this _____ day of December, 2012.

HUTCHISON & STEFFEN, LLC

Patricia Lee [8287]
Telia U. Williams [9359]
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145

*Attorneys for Kathleen Allgood, and the Estate of Anne Marie Allgood*

17