UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| KATHLEEN ALLGOOD and ESTATE OF ANNE MARIE ALLGOOD, <br><br> Plaintiffs, <br><br> v. <br><br> WEST ASSET MANAGEMENT, INC.; USAA FEDERAL SAVINGS BANK a/a/k/a USAA SECURED HOME EQUITY; NATIONAL BANKRUPTCY SERVICES.COM, LLC; NATIONAL DEFAULT SERVICING CORP.; NATIONAL BANKRUPTCY SERVICES, LLC, <br><br> Defendants. | Case No. 2:12-cv-02094-APG-NJK <br><br> **ORDER ON MOTIONS TO DISMISS** <br><br> (Dkt. Nos. 9, 53, 55) |

I.  **BACKGROUND**

In early 2011, the late Anne Marie Allgood ("Anne Marie") took out a home equity line of credit ("HELOC" or "Loan") from USAA Federal Savings Bank ("USAA FSB") in the approximate amount of $30,000. The HELOC was secured by Anne Marie's home in Las Vegas, Nevada. Before Anne Marie died in April 2011, she transferred—or attempted to transfer—ownership of the home to the Anne Marie Allgood Living Trust (the "Living Trust"). (Dkt. No. 6, First Amended Complaint ("FAC") ¶ 15.) Plaintiff Kathleen Allgood ("Allgood") is Anne Marie's only child, the trustee of Anne Marie's estate,[1] and the trustee of the Living Trust.

---

[1] Although Allgood refers to herself as the "trustee" of Anne Marie's estate, it is unclear if she intended to refer to herself as the Estate's executrix. Nonetheless, that distinction is irrelevant for purposes of this Order.

Allgood continued to make payments on the Loan out of the Living Trust's assets until the summer of 2011, when she became embroiled in a probate dispute with her half-sister (the daughter of Allgood's father and stepdaughter of Anne Marie) concerning Anne Marie's estate. According to Allgood, the expenses incurred in the probate dispute precluded her from making payments on the Loan.

On November 20, 2011, USAA FSB sent Allgood a letter stating that the Loan account was changed into the name of "Estate of Anne-Marie Allgood" and that the current balance was $27,054.57. (Dkt. No. 21-1 at 1.) The letter did not state that the account was in default.

In early December, 2011, defendant National Default Servicing Corporation ("NDSC") sent a series of letters to Allgood. (Dkt. No. 21-1 at 2–9.) All of the letters were all dated December 7, 2011, but Allgood pleads that the precise dates when she received them, and the order in which she received them, are uncertain. NDSC issued two types of letter. The first type is a dunning letter, which, in relevant part, stated that (i) National Bankruptcy Services.Com, LLC ("NBS") is the creditor and servicer of the Loan; (ii) NBS retained NDSC to contact Allgood on NBS's behalf regarding collection; (iii) the Loan is "in serious default[;]" (iv) the date of default was July 4, 2011; (v) the total amount due to reinstate the loan, as of December 7, 2011, was $1,390.50; (vi) Allgood had the right to cure the default within 30 days; (vi) if Allgood did not cure, NBS would accelerate the loan and "without further notice foreclosure proceedings will be initiated. Failure to cure your default may result in foreclosure of your property, if permitted by law[;]" (vii) Allgood may have the right to cure the default after acceleration of the Loan and prior to the foreclosure sale; (viii) all payments must be sent to NBS; and (ix) in somewhat smaller print, a boilerplate warning that NDSC was attempting to collect a debt and that Allgood had certain rights under federal law to contest the validity of the debt. (Dkt. No. 21-1 at 2–3.) One letter of this type was addressed to "Anne Marie Joseph Allgood" and another to "Anne-Marie Josephe[2] Allgood, Individually and as Trustee of the Anne-Marie Allgood Living Trust."

---

[2] The proper spelling of Anne Marie's middle name is unclear. It appears to be either "Joseph" or "Josephe."

The other type of letter from NDSC was a foreclosure notice of sorts (although not a formal notice of default). It stated, in pertinent part, that (i) NDSC was retained to enforce the Loan by non-judicial foreclosure; (ii) the good-faith estimate of the debt owed was $28,036.28; and (iii) the loan servicer was NBS. (Dkt. No. 21-1 at 5.) One letter of this type was addressed to "Anne Marie Josephe Allgood" and another to "Anne-Marie Josephe Allgood, Individually and as Trustee of the Anne-Marie Allgood Living Trust."

Also on or about December 7, 2011, Allgood received a letter from defendant West Asset Management, Inc. ("WAM"). (Dkt. No. 21-1 at 10–16.) Enclosed was an apparent copy of a "creditor's claim" filed in probate court against Anne Marie's estate. The claim is by "West Asset Management, Inc. for USAA Secured Home Equity Loan" in the amount of $27,054.57 (Dkt. No. 21-1 at 10.) Allgood asserts that this claim was filed solely to intimidate and coerce her into paying the outstanding balance on the Loan. She alleges that WAM filed this claim in the probate case concerning the dispute between she and her stepsister, and that WAM's claim cannot be resolved in that probate case as a matter of law. She also asserts various facial deficiencies with the "creditor's claim" under Nevada law such that it cannot form the basis of any relief in probate court.

During this time period, Allgood alleges that she received various phone calls from NDSC attempting to collect on the Loan.

On December 26, 2012, Allgood filed a complaint in this Court, claiming violations of the federal Fair Debt Collection Practices Act ("FDCPA")[3] and the Nevada corollary.[4] In particular, she claims that all Defendants violated 15 U.S.C. §§ 1692e and 1692g by making false representations of the character, amount, or legal status of the debt in question, by using false or deceptive means to collect a debt, and by issuing a deficient "initial letter" that overshadowed the statutory notice requirements. She next claims that NDSC violated 15 U.S.C. §§ 1692c and

---

[3] 15 U.S.C. §§ 1601, 1692–1692p.

[4] NRS Chapter 649 regulates "collection agencies." NRS § 649.370 provides that "a violation of any provision of the federal [FDCPA] . . . , or any regulation adopted pursuant thereto, shall be deemed to be a violation of this chapter."

3

1692d by contacting her after she requested that all communication cease, and by repeatedly telephoning her with the intent to annoy, abuse, or harass her. She further claims that "one or more of the Defendants" has attempted to collect on the Loan without the proper collector's license required under Nevada statute. She seeks declaratory relief, injunctive relief, actual damages, statutory damages, punitive damages, attorney's fees, and costs.

By stipulation, defendant WAM was dismissed from the case with prejudice. (Dkt. No. 39.) Defendants NBS, NDSC, and USAA have separately filed motions to dismiss. (Dkt. Nos. 9, 53, 55.) This Order resolves the three pending motions to dismiss.

## II.   ANALYSIS

### A.   Legal Standard — Motion to Dismiss

A properly pled complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a complaint must "contain[] enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 696 (internal quotation marks and citation omitted).

District courts must apply a two-step approach when considering motions to dismiss. *Id.* at 679. First, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiff's favor. *Id.*; *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247–48 (9th Cir. 2013). Legal conclusions, however, are not entitled to the same assumption of truth even if cast in the form of factual allegations. *Iqbal*, 556 U.S. at 679; *Brown*, 724 F.3d at 1248. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678. Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the complaint alleges facts that allow the court to draw a

reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 663. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and citation omitted). When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the [district] court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.[5]

### B. Motion to Dismiss by NBS

NBS moves to dismiss on the basis that Allgood has not alleged that it directly engaged in any wrongdoing under the FDCPA or Nevada statute. Allgood responds that she "alleged that NBS *acquiesced* in allowing its name to be used by defendant [NDSC], also a 'debt collector,' or was itself responsible for a series of misleading and deceptive letters[.]" (Dkt. No. 20 at 3 (emphasis added).)

"Under general principles of agency—which form the basis of vicarious liability under the FDCPA, *see Newman v. Checkrite California*, 912 F. Supp. 1354, 1370 (E.D.Cal.1995)—to be liable for the actions of another, the 'principal' must exercise control over the conduct or activities of the 'agent.'" *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006) (citing RESTATEMENT (SECOND) OF AGENCY § 1 (1958)). NDSC's letters state that the creditor and current beneficiary are NBS, that the debt is owed to NBS, that NBS is the Loan's servicer, and that payments should be directed to NBS. Although there are no precise, direct allegations in the Complaint to establish an agency relationship between NDSC and NBS,

---

[5] NDSC seems to assert that the heightened pleading standards of Rule 9(b) apply because claims of misrepresentation by a debt collector are grounded in fraud or sound in fraud. (Dkt. No. 55 at 7.) There is no binding authority holding that Rule 9(b) applies to FDCPA claims. The Court agrees with the substantial body of persuasive authority that claims of FDCPA violations are properly measured under the Rule 8 standard. *See Prophet v. Myers*, 645 F. Supp. 2d 614, 617 (S.D. Tex. 2008) ("Courts considering the issue have invariably determined the sufficiency of FDCPA pleadings by applying Rule 8 rather than Rule 9(b). . . . This is so even when a plaintiff alleges that a defendant made false representations in violation of § 1692e of the FDCPA, largely because establishing a violation of § 1692e is a substantially different matter than establishing common law fraud." (internal quotation marks and citations omitted)).

Allgood's allegations are sufficient to render it plausible at this stage that NBS exercised control over NDSC's conduct or activities. Therefore, NBS's motion to dismiss is denied. *See Iqbal*, 556 U.S. at 679.

### C. Motion to Dismiss by USAA FSB

Under the FDCPA,

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purposes of section 1692f(6) of this title,[6] such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include--
>
> (A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;
>
> (B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts; . . . [and]
>
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person[.]

15 U.S.C. § 1692a(6). A "creditor" is

> any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

*Id.* § 1692a(4). An original lender is thus a creditor, but a debt assignee who obtains the assignment for the sole purpose of collection is not a creditor.

---

[6] 15 U.S.C. § 1692f(6) prohibits a debt collector from taking or threatening to take any nonjudicial action to dispossess property if the debt collector has no enforceable security interest in the property, does not intend to take possession of the property, or the property is exempt from such dispossession.

By the express terms of the statute, a creditor collecting its own debt is not a "debt collector." However, if a creditor uses an alias "which would indicate that a third person is collecting or attempting to collect" the creditor's own debt, the creditor is a "debt collector." *Id.* Whether the alias would indicate that a third party is attempting to collect is measured from the perspective of the "least sophisticated consumer." *See Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 254 (S.D.N.Y. 2008).

Vicarious liability under the FDCPA is restricted to principals who themselves are "debt collectors." *Oei v. N. Star Capital Acquisitions*, 486 F. Supp. 2d 1089, 1097 (C.D. Cal. 2006). In other words, the liability of a "debt collector" agent does not travel upstream to a non-"debt collector" principal on whose behalf the agent is collecting the debt.

There is no dispute that USAA FSB is the creditor of the home equity line of credit ("HELOC") at issue. (*See* Amended Compl. ¶ 13.) Allgood argues that USAA FSB is nonetheless a "debt collector" because the alternate name "USAA Secured Home Equity" appears on the "creditor's claim" filed by WAM in probate court. Allgood contends that USAA FSB's "consent[] for its name to be used in such claim . . . is sufficient to establish liability pursuant to FDCPA." (Dkt. No. 59 at 3.) The "creditor's claim" asserts that WAM is bringing the claim on behalf of USAA SHE. (Dkt. No. 21-1 at 10.) The Court deems this assertion as true—that WAM filed the "creditor's claim" at USAA SHE's behest. *Meadow Valley Contractors, Inc. v. Johnson*, 89 F. Supp. 2d 1180, 1183 (D. Nev. 2000).

USAA FSB is not directly liable as a "debt collector" under the FDCPA because it was the creditor of the Loan and was acting to collect its own debt. 15 U.S.C. § 1692a(6)(A). For the same reason, it cannot be vicariously liable for WAM's actions. *Oei*, 486 F. Supp. 2d at 1097.

As to the alternate name, even if USAA FSB authorized the use of "USAA Secured Home Equity" on the "creditor's claim," USAA FSB would not thereby be liable as a "debt collector" because USAA FSB's possible use of "USAA Secured Home Equity" does not plausibly indicate that USAA FSB is employing a third person to collect its debt. *See* 15 U.S.C. § 1692a(6). The term "USAA" appears in both names, making it merely possible, but not plausible, that USAA SHE would be perceived as an entity wholly distinct from USAA FSB.

The Court thus grants USAA FSB's motion to dismiss. *See Twombly*, 550 U.S. at 570.

### D. Motion to Dismiss by NDSC

#### 1. "Debt Collector"

As to NDSC, Allgood conclusorily alleges that NDSC's principal purpose is the collection of debts using the mail and telephone, and that NDSC regularly attempts to collect debts owed to another. (Amended Compl. ¶ 10.) This simply restates the elements of a "debt collector" under 15 U.S.C. § 1692a(6) and, on its own, is insufficient to establish the necessary element of "debt collector" for FDCPA liability. *Iqbal*, 556 U.S. at 678. However, the fairly detailed allegations of multiple dunning letters by NDSC allows the Court to reasonably infer that NDSC is a "debt collector," in the absence of an exception to the general rule under 15 U.S.C. § 1692a(6).

Under the relevant statutory exception, an entity is *not* a "debt collector" if the debt was not in default at the time the entity obtained the debt. 15 U.S.C. § 1692a(6)(F). The date of default is July 4, 2011. (Amended Compl. ¶ 24; Dkt. No. 21-1 at 2, 7.) It is unclear, however, when NDSC acquired the right to seek payment on the Loan and when NBS started servicing the loan (assuming without deciding that NBS is the Loan's servicer). The NDSC letters state that it "has been retained by [NBS], the Creditor of the above referenced mortgage . . . to contact you regarding the status of your account," but there is no indication of *when* that retention occurred. (*Id.*) There is no allegation that NDSC and/or NBS "obtained" the Loan after July 4, 2011. Because the NDSC letters arrived about five months after the date of default, the Court can reasonably infer in Allgood's favor that NDSC and/or NBS "obtained" the Loan (or at least the right to service the Loan) after the date of default. Moreover, on a motion to dismiss, the burden is on the alleged debt collector to show that the debt was *not* in default when the debt collector obtained the debt. *Rockridge Trust v. Wells Fargo, N.A.*, __ F. Supp. 2d __, 2013 WL 5428722 at *14 n.22 (N.D. Cal. Sep. 25, 2013). Thus, the exception under 15 U.S.C. § 1692a(6)(F) is inapplicable.

In addition, an entity is not a "debt collector" if its activities were connected to a non-judicial foreclosure. *Id.* at *13 ("Although the Ninth Circuit has not addressed whether foreclosure proceedings constitute debt collection within the ambit of the FDCPA, courts in this

Circuit have regularly held that nonjudicial foreclosure is not debt collection."); *Diessner v. Morg. Elec. Registration Sys.*, 618 F. Supp. 2d 1184, 1188 (D. Ariz. 2009); *Mansour v. Cal-Western Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1182 (D. Ariz. 2009) ("[A] non-judicial foreclosure proceeding is not the collection of a 'debt' for the purposes of the FDCPA."). The scope of the necessary "connection" to foreclosure activities is uncertain, however. *See Thepvongsa v. Reg'l Trustee Servs. Corp.*, __ F. Supp. 2d __, 2013 WL 5366065 at *6 n.8 (W.D. Wash. Sep. 25, 2013) ("The current trend among district courts in the Ninth Circuit is to find that, at least insofar as defendant confines itself to actions *necessary* to effectuate a nonjudicial foreclosure, only § 1692f(6) of the FDCPA applies." (emphasis added)). *But see Gillespie v. Countrywide Bank FSB*, 2011 WL 3652603 at *2 (D. Nev. 2011) (stating without elaboration that "activities undertaken in connection with a nonjudicial foreclosure do not constitute debt collection under the FDCPA.").

Several district courts have distinguished foreclosing a security interest from taking steps to collect funds in satisfaction of the underlying debt obligation. *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) ("Foreclosing on a trust deed is distinct from the collection of the obligation to pay money."); *Gray v. Four Oak Court Ass'n*, 580 F. Supp. 2d 883, 887 (D. Minn. 2008) ("[T]he statute's definition of a 'debt collector' clearly reflects Congress's intent to distinguish between 'the collection of any debts' and 'the enforcement of security interests.'").

Notably, the Sixth Circuit recently rejected *Gray*'s determination that Congress intended to distinguish between debt collection and enforcing a security interest. *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 463 (6th Cir. 2013). The court analyzed the interplay between the general rule that a "debt collector" is one whose principal purpose is "the collection of any debts" and the later statement (in the same section of the statute) that "[f]or the purposes of section 1692f(6) . . . , [a debt collector] also includes any person" whose principal purpose "is the enforcement of security interests." *Id.* at 463 (citing 15 U.S.C. § 1692a(6)). The court reasoned:

> The third sentence in the definition [discussing § 1692f(6)] does not except from debt collection the enforcement of security interests; it simply makes clear that some persons who would be without the scope of the general definition are to be

included where § 1692f(6) is concerned. . . . It operates to include certain persons under the Act (though for a limited purpose); it does not exclude from the Act's coverage a method commonly used to collect a debt.

*Id.* (internal quotation marks and citations omitted). Those that are "without the scope of the general definition" are the limited class of persons whose "only role in the debt collection process is the enforcement of a security interest," such as repossession agencies and their agents. *Id.* at 464 (internal quotation marks and citation omitted). The court then held that "mortgage foreclosure is debt collection under the [FDCPA]." *Id.* at 464.

Although the Sixth Circuit's reasoning is compelling, this Court need not reach the precise question of whether non-judicial foreclosure itself is debt collection under the FDCPA. The Court agrees with the line of cases distinguishing between foreclosing a security interest and collecting the underlying debt through dunning (i.e., requesting payment of funds on the debt). Here, NDSC's actions, although taken in the shadow of threatened foreclosure, were not *necessary* to the foreclosure process. *See Thepvongsa*, 2013 WL 3652603 at *2. The collection efforts undertaken by NDSC are not unlike those of a debt collector attempting to collect on a credit card or other consumer debt.   For the purposes of this case, NDSC is a "debt collector" under the FDCPA.

### 2.   Allgood's Substantive Allegations

NDSC contends that Allgood failed to state a claim for FDCPA violations because NDSC's alleged actions were "in compliance with the terms of the home loan agreement and applicable state law." (Dkt. No. 55 at 10.) Even if that were true, however, a debt collector can take steps that do not breach the underlying loan contract or state foreclosure laws yet violate the FDCPA. For example, a loan contract that allows for payment acceleration upon default does not authorize a debt collector to falsely represent the amount of the debt in a letter informing the debtor that the payments will be accelerated. 15 U.S.C. § 1692e(2)(A). Also, a debt collector could comply with Nevada statutory requirements for foreclosure noticing while still violating 15 U.S.C. § 1692c by contacting the debtor after she requested in writing that all communication cease concerning the underlying debt obligation. Accordingly, the Court denies NDSC's request to dismiss the FDCPA claims.

NDSC next contends that a collector's license under NRS Chapter 649 is not required in order to conduct a non-judicial foreclosure sale. (Dkt. No. 55 at 10.) Under NRS § 649.075(1),

> a person shall not conduct within this State a collection agency or engage within this State in the business of collecting claims for others, . . . or seek to make collection or obtain payment of any claim on behalf of another without having first applied for and obtained a license from the Commissioner.[7]

At least one Nevada state district court judge has held that the exercise of a power of sale under a deed of trust is not the collection or solicitation of a claim, implying that a collector's license is not necessary to foreclose. (Dkt. No. 55 at 10–11.)[8] As explained above though, NDSC's activities were not limited to foreclosing on the Loan's security instrument. NDSC took steps to collect funds to satisfy the underlying debt obligation, and these steps appear to constitute "seek[ing] to make collection or obtain payment of any claim on behalf of another." Therefore, the Court cannot say as a matter of law that NDSC was not required to obtain a collector's license in Nevada. The Court therefore denies NDSC's motion to dismiss.

### III.  CONCLUSION

In accord with the above, the Court hereby ORDERS:

1. NBS's motion to dismiss (Dkt. No. 9) is DENIED.

2. USAA FSB's motion to dismiss (Dkt. No. 53) is GRANTED.

3. NDSC's motion to dismiss (Dkt. No. 55) is DENIED.

DATED this 27 day of November, 2013.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[7] The exception for persons holding a certificate of registration as a foreign collection agency is inapplicable in this case. NRS § 649.075(2).

[8] NDSC provided the name of the case that so held (*Quality Loan Serv. Corp. v. State of Nev., Dep't of Bus. & Ind., Fin. Inst. Div.*), but did not provide a complete case citation. Nonetheless, in the absence of any counterargument by Allgood as to the state court's holding, the Court accepts NDSC's articulation of that court's decision for the purposes of this Order.

11